**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHRISTINA L. MATTICOLA,                      )
                                             )
                        *Plaintiff*,         )
                                             )
        v.                                   )        Civil Action No.:07-00338
                                             )
DEP'T OF THE AIR FORCE,                      )
                                             )        The Honorable
                        *Defendant*.         )        Judge Colleen Kollar-Kotelly


**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
RESPONSE TO DEFENDANT'S ALTERNATIVE MOTION FOR A
CONTINUANCE OF BRIEFING SCHEDULE**

The complaint in this case was filed on February 13, 2007 and served thereafter on the Defendant. Over a month later, Plaintiff filed a Partial Motion for Summary Judgment on the question of liability, reserving the issue of damages for another day. Over the course of the next month, Defendant filed four separate motions for enlargement of time until filing an Opposition to Plaintiff's Motion and filing an Answer.

**A.      Defendant's argument that Plaintiff's Motion for Partial Summary Judgment is unsupported has no merit.**

The Air Force asserts that Plaintiff's Motion for Partial Summary Judgment was filed "even before the Defendant was given time to file its answer." Defendant's Opposition at 3 (footnote omitted). The Air Force also argues that Plaintiff's Motion was filed based upon an unverified complaint and with no supporting affidavits, and that therefore the motion is "unsupported." Defendant's Opposition at 3. Both of these arguments are baseless.

The Federal Rules of Civil Procedure allow for filing a Motion for Summary Judgment prior to an Answer being filed and certainly before discovery commences. Rule 56(a) states that "a claimant may, at any time after the expiration of 20 days from the commencement of the action . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a).[1]  Indeed, the very case Defendant cites, *Williams v. Callaghan*, 938 F. Supp. 46 (D.D.C. 1996) supports such filings.  Citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the District Court in *Williams* observed that "[s]ummary judgment procedure is properly regarded not as a procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Williams*, 938 F. Supp. at 46 (quoting Fed. R. Civ. P. 1.). Summary judgment allows for the Court and the parties to narrow the issues before it to ensure the needless waste of precious resources. *Judicial Watch, Inc. v. U.S. Department of Commerce*, 34 F. Supp.2d 28, 41 (D.D.C. 1998).

The Air Force's argument that Plaintiff's Motion is "unsupported" and that the burden of proof has thus not shifted to it to defend the motion is entirely baseless.[2]  In short, Plaintiff's motion is well grounded; whether it should be granted is another matter.

---

[1] Undersigned counsel acknowledges that he failed to comply with Local Rules 7 and 56.1 by not citing to the Complaint in his Statement of Material Facts Not in Dispute.  Counsel apologizes to this Court; given that the only substantive pleading that had been filed in the case was the Complaint, however, it would seem to be a considerable stretch to find that Plaintiff's Motion should be struck because of this failure to comply with the Local Rules.

[2] Plaintiff has attached her sworn declaration, Exhibit 1, to this Reply.  Such a declaration is necessary given the Air Force's Opposition—facts as alleged in an unverified Complaint cannot be considered under Rule 56(e) in a contested case. *See Kelley v. Eli Lilly & Co.*, Civil Action No. 05-CV-1882, p.3 (D.D.C. 2007) (attached as Exhibit 2).  But Plaintiff's Declaration clearly can and should be considered under Rule 56(e).  In any event, a motion made under Rule 56 simply does not, as the Air Force incorrectly argues, require a verified complaint or a supporting affidavit or declaration.

**B. The Air Force has, in fact, failed to meet its burden of proof in its Opposition to Plaintiff's Motion for Partial Summary Judgment.**

In viewing a motion to dismiss or for judgment on the pleadings, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46. At that stage, the Court must accept as true the factual allegations of the complaint, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), and draw from them all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Haynesworth,* 820 F.2d at 1254.

Summary judgment, in contrast, is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial - whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). *See also United Parcel Service, Inc. v. International Broth. of Teamsters, AFL-CIO*, 859 F.Supp. 590, 593-94 (D.D.C. 1994).

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. *Anderson*, 477 U.S. 242. The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex,* 477 U.S. 317, 322.

In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party. *McKinney v. Dole,* 765 F.2d 1129, 1135 (D.C.Cir.1985); *see also Anderson,* 477 U.S. at 255. Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *McKinney,* 765 F.2d at 1135. Accordingly, the nonmoving party must provide evidence that would permit a reasonable jury to find in his or her favor. *Anderson,* 477 U.S. at 255-56. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). *See also Sampson v. Washington Metro. Area Transit Authority*, 477 F.Supp.2d 223, 226 (D.D.C. 2007).

In its defense, the Air Force argues that there are material facts in dispute, specifically "(1) whether there is an improper disclosure from a record maintained in a system of records of the USAF; and (2) whether the Plaintiff was adversely effected [sic] by the improper disclosure of such a record." Defendant's Opposition at 9. The Air

Force's argument is not well taken.  Partial summary judgment should be granted in favor

of Mrs. Matticola.

### 1. The subject of Plaintiff's Motion is limited to liability regarding the wrongful disclosure and does not address whether or not Plaintiff suffered an adverse effect.

As a threshold matter, Plaintiff's Motion for Partial Summary Judgment was

limited to the issue of liability:

> To the extent that Plaintiff's MSJ is read as claiming harm justifying an award of damages, any language so read should be viewed as extraneous and unnecessary to the issue addressed therein.  Plaintiff intends to prove that the wrongful disclosure harmed and damaged her through the presentation of evidence at trial, including expert, lay testimony and documentary evidence.  Plaintiff does not claim that the issue of damages is ripe for summary judgment.

> The issue of damages is independent of the issue of liability, and the issue of liability is properly addressed before the issue of damages.

Plaintiff's Motion for Partial Summary Judgment at 5.  Plaintiff fully acknowledges that

to be able to recover under the Privacy Act for the wrongful disclosure of sensitive

medical information such as this, Plaintiff must demonstrate that she suffered from an

"adverse effect."  And while it seems entirely intuitive that such adverse effect would

result from a situation such as Mrs. Matticola's, it is for another day to make such

determination.  That said Plaintiff is fully confident that the adverse effect required to

obtain damages under the Privacy Act will be established before this Court.  5 U.S.C. §§

552a(g)(1)(D); *Doe v. Choe*, 540 U.S. 614, 624-625 (2004).

On the question of liability, the Air Force essentially argues that others knew of

Mrs. Matticola's sensitive medical condition based upon rumor or gossip.  Defendant's

Opposition at 10.  The evidence that the Air Force presents on this score is an "affidavit"[3]

---

[3] The government acknowledges that the Gillet statement is styled as an affidavit, but is in fact a "declaration" made pursuant to 28 U.S.C. § 1746.  Defendant's Opposition at 6 n.2.  Yet the Gillet

of Leyla B. Gillett, a non-commissioned officer in charge of the laboratory at the 374th Medical Support Squadron, Yokota Air Force Base, Japan, and the Declaration of Captain Kyle W. Little, USAF, *who is the attorney representing the Air Force in these proceedings.*  As detailed, *infra*, neither of these "affidavits" meets the government's burden of demonstrating that there is no material fact in dispute.  Therefore, summary judgment should be granted in Plaintiff's favor.

### 2.  The Gillet Declaration.

SSGT Gillet works in the clinic where she administers STD tests such as the one she administered to Mrs. Matticola in the Spring of 2006.  In the course of that treatment, SSGT Gillet states that Mrs. Matticola disclosed that her husband had given her Chlamydia because he had cheated on her.  Gillet Declaration at 3.  SSGT Gillet was "shocked" at this because she was not close friends with Mrs. Matticola.  *Id.* at 2-3.  SSGT Gillet then states that the next time she, and at least one other person, Ms. Susana Fields, heard the disclosure of Plaintiff's extremely sensitive information is when SSGT Troi Waln, USAF, disclosed the argument in the middle of the Base Enlisted Club where at least one other person, TSGT Toby Nielson, USAF, may have heard the disclosure, though SSGT Gillet  is "not be certain if there were other people around."  Gillet Affidavit at 3.

Based upon this evidence, the Air Force incredulously argues that "Plaintiff, herself, voluntarily disclosed the information [to SSGT Gillet in the course of confidential medical treatment]  about having contracted a STD, and thus, other

---

Affidavit/Declaration fails to include the requisite language under that statute, 28 U.S.C. § 1746(1), because it appears that the Affidavit/Declaration was signed by Ms. Gillet outside the United States.

individuals could have known the Plaintiff's medical condition." Defendant's Opposition at 10 (footnote omitted). This is sheer and utter speculation.

SSGT Gillet learned of Mrs. Matticola's medical condition while performing her duties as a medical clinician. The apparent disclosure that Mrs. Matticola made was to her health care provider, not to a friend. This is confirmed by SSGT Gillet who declared that she did not consider Mrs. Matticola a "close friend." In fact, SSGT Gillet states that the next time she learned of this disclosure was when she was "with Ms. Troi Waln-Johnson" and she heard SSGT Waln disclose the sensitive medical condition in the enlisted club on base while at least one other person was present. Gillet Declaration at 3.

How this evidence supports the government's opposition is entirely baffling. If anything it confirms that SSGT Waln willfully violated Mrs. Matticola's rights under the Privacy Act. It in no way whatsoever supports the Air Force's conclusion that SSGT Gillet or others learned of Mrs. Matticola's medical condition due to her disclosure to others. Instead, quite the contrary, it confirms that Mrs. Matticola's rights were violated.

### 3. CAPT Little's Declaration.

Setting aside that Captain Little has no personal knowledge regarding the events underlying this litigation but instead merely represents the interests of the Air Force in this matter, Captain Little's Declaration (hereinafter "Little Declaration") fails to buttress what is now a weak argument. Instead, it seemingly adds more weight to a finding that the Air Force violated Mrs. Matticola's rights under the Privacy Act. At this point, it is clear that there is not only smoke to Plaintiff's argument, there's fire too.

Captain Little declares that SSGT Waln was found guilty at Non-Judicial Punishment, provided for under Article 15, Uniform Code of Military Justice (hereinafter

"UCMJ"), 10 U.S.C. § 815, because she disclosed Mrs. Matticola's sensitive medical information. SSGT Waln's actions violated Article 92, UCMJ, 10 U.S.C. § 892. A servicemember like SSGT Waln who violates Article 92, UCMJ, 10 U.S.C. § 892 of the Code can receive a dishonorable discharge, forfeiture of all pay and allowances, and confinement for two years at a general court martial. A violation of Article 92 can be punished up to a bad conduct discharge, forfeiture of all pay and allowances, and confinement for two years.

As noted, the Little Declaration reports that SSGT Wlan's commanding officer found her guilty at NJP. While no specific "standard of proof" is required to impose such punishment, paragraph 3.4 of Air Force Instruction (hereinafter AFI) 51-202 (attached as Exhibit 3), which implements Article 15, states:

> **3.4. Standard of Proof.** While no specific standard of proof applies to NJP proceedings, including appeals, commanders should recognize that a member is entitled to demand trial by court-martial, in which case proof beyond a reasonable doubt of each element of every offense by legal and competent evidence is a prerequisite to conviction. Whether such proof is available should be considered before initiating action under Article 15. If such proof is lacking, NJP action is usually not warranted.

AFI 51-202, ¶ 3.4. Curiously, rather than attach what are ostensibly very relevant documents, such as the findings of SSGT Waln's commanding officer, CAPT Little instead attaches to his declaration and cites to SSGT Waln's unsworn, self-serving statements that she made before and after she was found guilty of wrongfully disclosing Mrs. Matticola's sensitive medical information.

8

### 4. The evidence of record establishes that summary judgment should be granted.

In determining whether Plaintiff has met her burden on summary judgment, this Court must consider all factual inferences in the light most favorable to the non-moving party. *McKinney v. Dole,* 765 F.2d 1129, 1135 (D.C.Cir.1985); *see also Anderson,* 477 U.S. at 255. Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *McKinney,* 765 F.2d at 1135. Accordingly, the nonmoving party must provide *evidence* that would permit a reasonable jury to find in his or her favor. *Anderson,* 477 U.S. at 255-56. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). None of the proffered evidence supports the government's position that there are material facts in dispute. In fact, the evidence fully entirely bolsters Plaintiff's case.

SSGT Waln's commanding officer determined that SSGT Waln had violated Mrs. Matticola's rights. Her commanding officer sanctioned her for her criminal actions. Yet incredibly the government cites to SSGT Waln's self-serving, unsworn declarations in a feeble attempt to justify its opposition to Plaintiff's Motion, just as it cites to the Gillet Declaration that in no way whatsoever supports its untenable position.

### *Conclusion*

Because the government has failed to meet its burden to demonstrate that there are material facts in dispute, Plaintiff is entitled to summary judgment on the question of whether or not the Air Force wrongfully disclosed her sensitive medical information. Therefore, the Court should grant Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

/s/

David P. Sheldon (446039)
Law Offices of David P. Sheldon, PLLC
Barracks Row
512 8th Street, S.E.
Washington, D.C.  20003
(202) 546-9575

*Attorney for Plaintiff*

June 6, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHRISTINA L. MATTICOLA )
)
*Plaintiff*, )
)
v. ) Civil Action No. 1:07CV00338
)
DEPARTMENT OF THE AIR FORCE, )
) The Honorable
*Defendant*. ) Judge Colleen Kollar-Kotelly

**DECLARATION OF CHRISTINA L. MATTICOLA**

1. In September 2005, while living at Yokota Air Force Base in Yokota, Japan, I, Christina L. Matticola, the spouse of an enlisted service member, underwent certain medical tests for sexually transmitted diseases, which were administered by medical personnel at the United States Air Force Base Hospital.

2. Approximately two weeks later, I was informed of the test results and that those tests confirmed that I had tested positive for a sexually transmitted disease, Chlamydia.

3. On March 18, 2006, I went to the Enlisted Club, located on the base, to socialize with my friends.

4. While at the Enlisted Club, I was involved in a contentious verbal altercation with SSgt Tori Waln-Johnson, USAF, who was assigned to the United States Air Force Base hospital. The incident escalated to the point that SSgt Waln-Johnson publicly and maliciously revealed that I had tested positive for this infection. Specifically, SSgt Waln-Johnson announced "it's not my fault you're a dirty slut and you have Chlamydia" or words to that effect.

5. SSgt Waln-Johnson knew this information based upon medical records the Air Force maintained regarding me.

1

6. SSgt Waln-Johnson did not request my permission before disclosing the information.

7. This disclosure of my medical information had an adverse impact on me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 6, 2007.

*Christina L Matticola*

Christina L. Matticola

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1238789 (D.D.C.)
**(Cite as: Slip Copy)**

Page 1

Kelley v. Eli Lilly and Co.
D.D.C.,2007.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Melissa KELLEY, Plaintiff,
v.
ELI LILLY AND COMPANY, Defendant.
**Civil Action No. 05-CV-1882 (RCL).**

April 27, 2007.

Aaron M. Levine, Brandon J. Levine, Renee Lynne
Robinson-Meyer, Steven Jay Lewis, Aaron M.
Levine & Associates, P.A., Washington, DC, for
Plaintiff.
Lawrence Hedrick Martin, James J. Dillon, Foley
Hoag LLP, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

ROYCE C. LAMBERTH, United States District
Judge.
**\*1** This matter comes before the Court on the
defendant's Motion [12] for Summary Judgment.
Upon consideration of the defendant's motion, the
plaintiff's opposition [14] thereto, the defendant's
reply [21] brief, the applicable law, and the entire
record herein, the Court concludes that the
defendant's motion will be GRANTED. The Court's
reasoning is set forth below.

### *BACKGROUND*

While living in Massachusetts, pregnant with the
plaintiff, the plaintiff's mother was allegedly
prescribed Diethylstilbestrol ("DES") by Dr. Safon in
1970 and 1971. (Def.Mot.3.) The plaintiff's mother
was allegedly prescribed DES even through she was
not experiencing any unusual symptoms during her
pregnancy. (*Id.*) The plaintiff was subsequently born
at the Boston Hospital for Women, in Boston,
Massachusetts, on August 24, 1971. (*Id.*) The
physician who allegedly prescribed DES to the
plaintiff's mother, Dr. Safon, is now deceased. (*Id.*)
According to both parties, there are no medical
records demonstrating that Dr. Safon prescribed to
the plaintiff's mother the defendant's DES, as
opposed to a generic prescription or a specific
prescription for another drug company's brand of

DES. (*Id.*) In fact, both parties agree that there are no
medical records or prescription records
demonstrating that Dr. Safon prescribed the plaintiff's
mother DES at all. (*Id.*)

The drug DES itself was never proprietary to any
company. (*Id.* at 4.) During the time period that the
plaintiff's mother allegedly ingested DES, there were
only 6-8 national companies that produced DES and
a number of companies who acted as local rebottlers,
selling DES regionally. (Pl. Reply Br. 6.) Federal
Regulations at the time of the plaintiff's mother's
pregnancy required all manufacturers of prescription
medications, such as DES, to provide instructions and
warnings for physicians on prescription medications
that could only be obtained through the order of a
licensed medical practitioner. (*Id.*) The defendant, in
producing its product literature never expressly
rejected its use in pregnant women, having made
reference to the use of DES in pregnant women no
less than five times without warning or the risks or
advising against its use during pregnancy. (*Id.* 6-7.)

Furthermore, the plaintiff has a letter, which if all
inferences are given to the plaintiff, states that DES
labeling was industry wide, with the defendant taking
the lead with the Food and Drug Administration. (*Id.*
at 7.) With the testimony of Dr. Richard Falk, the
plaintiff contends that the defendant should have
known and warned of the dangers of DES by 1953.
(*Id.*) Through the testimony of Dr. Julius Piver, the
plaintiff contends that had warnings regarding the
dangers of taking DES during pregnancy, it would
have been a departure from the standard of care for
an obstetrician to prescribe DES to a pregnant
woman. (*Id.*)

The defendant contends and the plaintiff admits that
the plaintiff has provided no evidence that Dr. Safon
ever read or consulted the defendant's product
warnings and literature in determining whether or not
to prescribe a medication to the plaintiff's mother.
(*Id.*) However, the plaintiff has a statement from the
Pharmacist, Steven Baker, who worked at the Drug
Fair Pharmacy where the plaintiff's mother allegedly
filled her DES prescriptions during the relevant time
period. The plaintiff states Mr. Baker would testify
that if a woman came into the pharmacy during the
relevant time period with a prescription for "DES,"
"Stilbestrol," or Diethylstilbestrol," the defendant's
brand would have been dispensed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1238789 (D.D.C.)
(Cite as: Slip Copy)

Page 2

**\*2** The defendant now comes before the Court asking for its motion for summary judgment to be granted on all counts. The defendant argues that they are entitled to summary judgment as a matter of law because the plaintiff cannot come forward with any evidence that her mother's treating and prescribing physicians read or relied on any warnings or statements made by the defendant in deciding to prescribe the defendant's product to the plaintiff's mother.

### DISCUSSION

### 1. Choice of Law

Before this Court can address the defendant's motion for summary judgment on its merits, the Court must first determine the applicable law in this case. The basis for jurisdiction in this case is diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1), and thus state law provides the substantive rules of law for this case. *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938). In deciding which substantive rules of law to apply, Federal courts must apply the choice of law rules of the jurisdiction in which it sits. *Eli Lilly & Co. v. Home Ins. Co.,* 764 F.2d 876, 882 (D.C.Cir.1985), cert. denied 479 U.S. 1060 (citing *Klaxon Co. v. Sentor Electric Mfg. Co.,* 313 U.S. 487 (1941)). In past DES cases, this Court has applied the choice of law principles based on the interest analysis theory and/or the *lex loci delicti* theory, as in where the injury occurred. *Tidler v. Eli Lilly Co.,* 95 F.R.D. 332, 334-335 (D.D.C.1982). Under both of these choice of law principles, the proper choice of law in this case would be Massachusetts state law.

Under the interest analysis theory, also known as the governmental interest analysis, there is an evaluation of the governmental policies underlying the applicable laws and a determination of which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review. *District of Columbia v. Coleman,* 667 A.2d 811, 816 (D.C., 1995) (citing *Hercules & Co. v. Shama Restaurant,* 566 A.2d 31, 40-41 (D.C.1989)). In making this evaluation, the District of Columbia has relied in part on the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145: a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties;

and d) the place where the relationship is centered. *Id.* (citing *Estrada v. Potomac Elec. Power Co.,* 488 A.2d 1359, 1361 n. 2 (D.C.1985)). Part of the test for determining which jurisdiction's policy would be best advanced is determining which jurisdiction has the most significant relationship to the dispute. *Id.* (citing *Hercules,* 566 A.2d at 41 n. 18 (explaining parenthetically that the governmental interests test and the most significant relationship test have sometimes been treated as separate approaches to choice of law questions, but the courts have applied a constructive blending of the two approaches).

**\*3** In the present case, the plaintiff's exposure to DES took place in Massachusetts. (Def.Mot.6-7.) Massachusetts was also: where the plaintiff's mother lived during the time of her pregnancy; where she was allegedly prescribed DES; where the mother allegedly filled her DES prescriptions; and ultimately the place where the plaintiff was born. (*Id.*) In light of these facts as applicable under both the interest analysis theory and *lex loci delicti* theory, the proper choice of law would be Massachusetts state law.

### 2. Summary Judgment

The defendant moves this Court for summary judgment on the argument that the plaintiff has not demonstrated the connection between the allegedly tortious act committed by the defendant and the claim of her injury. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. Rule 56(c).[FN1] The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. *Todd & Weld, LLP v. Arcidi,* 2004 Mass.Super. LEXIS 68, \* 7 (citing *Pederson v. Time, Inc.,* 404 Mass. 14, 17, 532 N.E.2d 1211 (1989)). In Massachusetts, a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he or she demonstrates by reference to material described in Rule 56(c), and is unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case. *Auburn Merch. Distribs. v. Southland Corp.,* 1999 Mass.Super. LEXIS 61, \* 9 (Mass.Super.Ct.1999) (citing *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 716 (1991)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1238789 (D.D.C.)
(Cite as: Slip Copy)

FN1. The Massachusetts Rules of Civil Procedure are nearly identical to the Federal Rules of Civil Procedure on this issue. *Compare* Fed. R. Civ. P 56 *with* Mass R. Civ. P. Rule 56.

While the Court does look at the pleadings submitted by the parties in ruling on summary judgment, "conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." *See Cullen Enterprises, Inc. v. Massachusetts Property Ins. Underwriting Assoc.,* 399 Mass. 886, 890 (Mass.1987) (citing *Madsen v. Erwin,* 395 Mass. 715, 721 (1985) (quoting *Olympic Junior, Inc. v.. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir.1972)); *See McDonnell v. Flaharty,* 636 F.2d 184, 187 (7th Cir.1980); *Liberty Leasing Co. v. Hillsum Sales Corp.,* 380 F.2d 1013, 1014-1015 (5th Cir.1967)). For a complaint to be accorded evidentiary weight in determining if there exists an issue of material fact under Rule 56(c)), the complaint must be in compliance with Rule 56(e). *See Godbout v. Cousens,* 396 Mass. 254, 262-263 (1985).

To be in compliance with Rule 56(e), the complaint must be verified, in as far as it contains specific facts that the signer knows to be true from personal knowledge. *See Pupecki v. James Madison Corp.,* 376 Mass. 212, 217 (1978). When the complaint is not verified, the court considers it only to ascertain the nature of the cause of action or defense and to guide the court in determining which facts are material. *Godbout,* 396 Mass. at 262. Thus, allegations in an unverified complaint are not accorded any evidentiary weight in determining if there is a genuine issue of material fact under Rule 56. *Id.* Furthermore, affidavits provided by attorneys not made on personal knowledge are not considered during the granting of summary judgment. *See Pupecki,* 376 Mass. at 217 (footnoting *Shapiro Equip. Corp. v. Morris & Son Constr. Corp.,* 369 Mass. 968 (1976)). Since the complaint in this case has only been signed by the attorney for the plaintiff and not the plaintiff herself, averments made in the complaint shall not be considered evidence in this motion for summary judgment.[FN2]

FN2. While the attorney for the plaintiff did sign the complaint in compliance with Mass. R. Civ. Pro. Rule 11, that the information in the complaint is correct to his knowledge,

such learned knowledge would constitute hearsay, which is insufficient to defeat a motion for summary judgment. *See Madsen v. Erwin,* 395 Mass. 715, 721 (1985) (stating that "hearsay in an affidavit is unacceptable to defeat summary judgment").

*4 At the summary judgment stage, the rule requires that the plaintiff establish that at trial a reasonable jury could find it is more probable than not that the injury was caused by the event for which the defendant was responsible. *Spencer v. Baxter Int'l Inc.,* 163 F.Supp.2d 74, 77-78 (D.Mass.2001). (citing *Samos Imex Corp. v. Nextel Communications, Inc.,* 194 F.3d 301, 303 (1st Cir.1999); *accord Forlano v. Hughes,* 393 Mass. 502, 507-08, 471 N.E.2d 1315, 1319-20 (1984)). The plaintiff need not eliminate all possibility that the defendant's conduct was not a cause. It is enough that she introduce evidence from which a reasonable jury may conclude that it is more probable that the event was caused by the defendant than it was not. *Id.* (citing *Carey v. General Motors Corp.,* 377 Mass. 736, 740, (1979); *accord Colter v. Barber-Greene Co.,* 403 Mass. 50, 55 (1988)).

In this particular case, causation is an essential element to the plaintiff's claims of negligence and breach of warranty. Identification of the party responsible for causing injury to another is a longstanding prerequisite to a successful negligence action. *Payton v. Abbott Labs,* 386 Mass. 540, 571 (Mass., 1982). (citing *See Smith v. Ariens Co.,* 375 Mass. 620 (1978) (explaining that a plaintiff alleging injury caused by negligent design of snowmobile must prove defendant manufactured same)). This requirement serves two purposes: it separates wrongdoers from innocent actors, and also ensures that wrongdoers are held liable only for the harm that they have caused. *Id.* Thus, to survive summary judgment, the plaintiff must establish that it is more probable than not that this defendant's DES in particular caused the harm which the plaintiff is now suffering from.

### A. Market Share Liability

While not expressly stating so, the plaintiff's argument is based in part on a theory of market share liability. The essence of the plaintiff's argument is that the defendant was the industry leader in labeling and the largest producer and distributer of DES in the region that the plaintiff's mother lived in during the time of her pregnancy; therefore the defendant should be held liable. (*See* Pl. Mot. 11-12, 16-19; Appx. 6,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1238789 (D.D.C.)
**(Cite as: Slip Copy)**

9.) As aforementioned, identification of the party responsible for causing injury to another is a longstanding prerequisite to a successful negligence action. *Payton,* 386 Mass. at 571 (citing *See Smith,* 375 Mass. 620). Without addressing whether or not the plaintiff falls into the exception established in *Payton,* FN3 this Court concludes that the plaintiff failed to join all of the possible defendants and thus cannot proceed on any theory involving alternative liability. *See Spencer,* 163 F.Supp.2d at 79-80; *Domestic Loan and Inv. Bank v. Ernst,* 1996 WL 680080 *3 (Mass.Super.1996) (addressing that the allegations in the case did not meet the requirements imposed by courts that have recognized an alternative liability theory because bank did not join all possible defendants) (citing *See Zands v. Nelson,* 797 F.Supp. 805, 813 (S.D.Cal.1992)). Thus, for the plaintiff to survive summary judgment, there must be enough evidence from which a reasonable jury may conclude that it is more probable than not that the event was caused by this particular defendant. *See Spencer,* 163 F.Supp.2d at 77-78 (citations omitted).

> FN3. The court in *Payton* stated: "That is not to say that on an adequate record this court would not recognize some relaxation of the traditional identification requirement in appropriate circumstances so as to allow recovery against a negligent defendant of that portion of a plaintiff's damages which is represented by that defendant's contribution of DES to the market in the relevant period of time." 386 Mass. at 574.

### B. Negligent Failure To Warn

**\*5** Before the Court can address whether there are issues of triable fact surrounding the duty to warn, the Court must first determine to whom the defendant's duty to warn ran. The learned intermediary rule states that a drug manufacturer's duty to warn runs to the prescribing physician and not to the ultimate consumer of the product. *See Garside v. Osco Drug Inc.,* 976 F.2d 77, 80 (1st. Cir.1992). Under this doctrine, the manufacturer's duty is fulfilled once it adequately warns the physician. *Id.* (citing *Thomas v. Hoffman-LaRoche, Inc.,* 949 F.2d 806, 811 (5th Cir.), cert. denied, 504 U.S. 956 (1992)). Furthermore, the Supreme Judicial Court of Massachusetts has held that where the pharmacist has no specific knowledge of an increased danger to a particular customer, the pharmacist has no duty to warn that customer of potential side effects. *Cottam v. CVS Pharmacy,* 436 Mass. 316, 322-323 (2002)

(using as an example of specific knowledge *Hand v. Krakowski,* 89 A.D.2d 650 (N.Y.1982), where a pharmacist failed to warn a customer of the drug's adverse interaction with alcohol where the customer was known by the pharmacist to be an alcoholic). However, in order for pharmacists to warn in those most specific of circumstances, they must have the knowledge in the first instance. Thus while they may not have a duty to warn, they as pharmacists must be warned. Having addressed this issue and establishing that the duty to warn ran from the company to both the doctor and to the pharmacist the Court may now address the merits of the defendant's motion.

Under Massachusetts law there is shifting burden in failure to warn cases: (1) the plaintiff carries the initial burden of producing sufficient evidence that the defendant manufacturer failed to warn of a non-obvious risk about which the manufacturer knew or should have known, *Garside v. Osco Drug, Inc.,* 976 F.2d 77, 81 (1st Cir1992) (applying Massachusetts law) (citing *see MacDonald v. Ortho Pharmaceutical Corp.,* 475 N.E.2d 65, 68 (Mass.1985); (2) assuming the plaintiff raises a triable issue on this question, a rebuttable presumption arises that the physician would have heeded an adequate warning, *Id.* (citing *see Knowlton v. Deseret Medical, Inc.,* 930 F.2d 116, 123 (1st Cir1991) (applying Massachusetts law)); (3) defendant must then come forward with sufficient evidence to rebut that presumption, *Id.* (citing *see Knowlton,* 930 F.2d at 123); and (4) once the presumption is rebutted, plaintiff must produce sufficient evidence to create a triable issue on the question of causation. *Id.* Massachusetts law further instructs courts to be mindful that "generally, questions of causation, proximate and intervening, present issues for the jury to decide." *Id.* (citing *Solimene v. B. Grauel & Co.,* 507 N.E.2d 662, 665 (Mass.1987) (citations omitted)).

In light of the facts of this case, this Court must first determine whether the plaintiff has satisfied her burden of producing sufficient evidence that the defendant failed to warn of a non-obvious risk. Since this issue is raised upon a motion for summary judgment, the plaintiff is entitled to all justifiable inferences. *Douillard v. LMR, Inc.,* 433 Mass. 162, 163 (2001). In support of her position, the plaintiff has provided the statement of Dr. David Falk who swore that the medical literature in 1953 called the use of DES during pregnancy into question. (Pl. Reply Br.App. 22.) Dr. Falk further stated that such literature should have prompted further human and animal testing, which would have lead to the discovery of the non-obvious risks of DES. (*See Id.*)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff also provided the sworn statement of Dr. Julius Piver, who stated that had the defendant issued warnings regarding DES for pregnancy use, it would have been a departure from the standard of care for an obstetrician to prescribe DES to a pregnant woman. (See *Id.* App. 23.) Beyond those two statements, plaintiff has presented and made reference to numerous studies about the harmful effects of DES and presented evidence that DES was withdrawn from the stream of commerce due to its harmful effects. (*See Id.* 4-5; App. 1-6.) Giving the plaintiff every rational inference to which she is entitled, the plaintiff can be said to have satisfied her burden, establishing a rebuttable presumption that were the warning given, Dr. Safon would have heeded it.

*6 Having established the rebuttable presumption in favor of the plaintiff, the burden is now on the defendant to "come forward with sufficient evidence to rebut that presumption." However, since this is a motion for summary judgment, the plaintiff is still entitled to every rational inference in her favor. *Douillard,* 433 Mass. at 163 (2001). After examining the facts of this case and both parties briefs, the Court finds that the defendant presented sufficient evidence to rebut that presumption. In the undisputed facts of the case, the defendant asserts and the plaintiff admits that there are no medical records or prescription records demonstrating that Dr. Safon prescribed the plaintiff's mother DES at all.[FN4] (See Def. Mot 4); (Pl. Reply Br. 6.) In the absence of such evidence, a reasonable jury could not find that Dr. Safon, now deceased, in light of everything stated in the plaintiff's pleadings, briefs and attached exhibits, ever prescribed DES to the plaintiff's mother, much less that he prescribed the defendant's brand of DES. While the plaintiff is entitled to every rational inference, a non-moving party may not defeat summary judgment by relying upon mere allegations, evidence that is merely colorable, or evidence that is not significantly probative. *Signet Electronics Systems, Inc. v. Town of Amherst,* 1993 WL 13144402 *6 (Mass.Super.1993) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-250). Without putting forth any evidence that Dr. Safon ever prescribed DES specifically for the plaintiff's mother, there exists no evidence that would allow a reasonable jury reason to find that Dr. Safon read the defendant's materials in the first place.[FN5]

FN4. The defendant's undisputed fact number six stated:
Plaintiff has provided no medical records or

prescription records demonstrating that Dr. Safon prescribed Lilly's diethylstilbestrol, as opposed to a generic prescription or a specific prescription for another drug company's brand of diethylstilbestrol to Plantiff's mother during her pregnancy with Ms. Kelley. In fact, Plaintiff has provided no medical records or prescription records demonstrating that Dr. Safon prescribed Mrs. Elman diethylstilbestrol at all." (Def.Mot.3.)
The plaintiff's response was: "1-6 Admitted." (Pl. Reply Br. 6.)

FN5. The plaintiff agrees with this proposition. The defendant's undisputed fact number ten stated:
Plaintiff has proved no evidence demonstrating that Dr. Safon ever read or consulted Lilly's product warnings and literature in determining whether or not to prescribe a medication to Ms. Kelley's mother. (Def.Mot.4.)
The plaintiff's response was: "8-10 Admitted." (Pl. Reply Br. 6.)

Finding that the defendant has rebutted the presumption, the burden falls back upon the plaintiff to produce sufficient evidence to create a triable issue of fact. As previously stated, the plaintiff admitted that there are no prescription records demonstrating that Dr. Safon prescribed DES to the plaintiff's mother at all. (Pl. Reply Br. 6.) The plaintiff, to establish that it was the defendant's drug that harmed the plaintiff, relies on the statement of a Pharmacist, Mr. Steven Baker. (Pl. Reply Br. 17.) In his statement, Mr. Baker swore that if a woman walked into his pharmacy, the pharmacy where the plaintiff's mother allegedly shopped, with a prescription for DES, Stilbestrol or Diethylstilbestrol, she would have walked out with the defendant's product. (Pl. Reply Br.App. 7.) Giving the plaintiff every rational inference, absent any proof that the plaintiff's mother did in fact purchase DES from that pharmacy, this evidence is merely colorable and not enough to create a triable issue of fact.[FN6]

FN6. In her brief, the plaintiff states as a "genuine fact in issue" that Mr. Baker worked at the Drug Fair Pharmacy where the plaintiff's mother filled her DES prescriptions. However, nothing the plaintiff has provided demonstrates any support of this assertion. Nothing in Mr. Baker's

Slip Copy
Slip Copy, 2007 WL 1238789 (D.D.C.)
(Cite as: Slip Copy)

statement indicates that he had any personal knowledge of the plaintiff's mother nor ever indicated that the plaintiff's mother did frequent the store. (See Pl. Reply Br. App 6.) Furthermore, the plaintiff admitted that there are "no medical records or prescription records demonstrating that Dr. Safon prescribed Lilly's diethylstilbestrol." (Pl. Reply Br. 6.)

The case at hand is clearly distinguishable from *Baughn v. Eli Lilly & Co.,* 356 F.Supp.2d 1177 (D.Kan.2005), a case the plaintiff cites in support of her position. In *Baughn,* Barbara Baughn filed a product liability action against Eli Lilly because her mother took DES while she was pregnant. *Id.* at 1179. In the undisputed facts of the case, Ms. Baughn's mother was prescribed DES by Dr. Burkman and purchased her DES at the pharmacy attached to Dr. Burkman's office, which was owned by the same Dr. Burkman. *Id.* In establishing that there was a triable issue of fact as to whether it was Eli Lilly's DES that caused harm to Ms. Baughn, the testimony of Ms. Joan Augustine, a nurse for Dr. Burkman, was relied upon. *Id.* at 1181. Ms. Augustine testified that she helped fill some prescriptions in the pharmacy when the pharmacist was unavailable and that she only recalled DES from Eli Lilly being on the shelf during the time that Ms. Baughn's mother ingested DES. *Id.* at 1180-1181. The court in that case found that a reasonable jury could conclude, that during the relevant time period, Dr. Burkman only prescribed DES manufactured by Eli Lilly. *Id.* at 1181.

*7 In the present case, there is no such nexus between Dr. Safon, the Drug Fair, and the DES allegedly ingested by the plaintiff's mother. As aforementioned, there is no evidence that Dr. Safron prescribed DES to the plaintiff's mother, nor any evidence that Mr. Baker filled any DES prescriptions for the plaintiff's mother. (*See* Def. Mot 4); (Pl. Reply Br. 6.) There is no evidence that would allow there to be a rational inference made that Dr. Safon knew of the Drug Fair Mr. Baker worked at, nor of the actual products carried by that Drug Fair. (*See Id.*) In the absence of such a nexus, the beneficial inference made for Ms. Baughn cannot be made for this plaintiff.

The plaintiff contends that if the heeding presumption is found not to apply to Dr. Safon, the defendant had a duty to warn all persons in the medical profession who have any sort of decision-making capacity. *See Guevara v. Dorsey Lab. Div. Of Sandoz, Inc.,* 845 F.2d 364, 367 (1st Cir.1988). However, in

Massachusetts the duty to warn does not run to a pharmacist absent specific knowledge of an increased danger to a particular customer. *Cottam,* 436 Mass. at 322-323. While an argument could be made that a pharmacist cannot warn unless they know all of the specific damages in the first instance, the Court need not reach such a question on its merits. In this case, there is no evidence linking the plaintiff's mother to the Drug Fair. Furthermore, were the court to presume that the plaintiff's mother did frequent the Drug Fair, there is no evidence indicating Mr. Baker had any specific knowledge about the plaintiff's mother that would have required him to give such a warning. [FN7] *See Cottam,* 436 Mass. at 322-323. Absent such evidence, the plaintiff cannot be given the inference that Mr. Baker would have given her the defendant's DES and would have then had a duty to warn her in light of her pregnancy.[FN8] *See Id.*

> FN7. For instance, there is nothing any of the plaintiff's materials indicating Mr. Baker's knowledge that the plaintiff's mother was pregnant.

> FN8. It is this fatal flaw, the plaintiff's lack of evidence demonstrating any specific knowledge on the behalf of Mr. Baker, that causes the Court to reject all of the plaintiff's claims as they relate to the defendant's multiple negligence and warranty claims and Mr. Baker.

### D. Negligent Misrepresentation

Massachusetts courts have held that in order to recover for negligent misrepresentation, a plaintiff must show that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information. *Cummings v. HPG Intern., Inc.* 244 F.3d 16, 24 (1st Cir.2001) (applying Massachusetts law) (citing *Fox v. F & J Gattozzi Corp.,* 672 N.E.2d 547, 551 (Mass.App.1996) (citing Restatement (Second) of Torts § 552(1) (1977)); *see also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 41 (1st Cir.1998)). The key element the plaintiff fails to establish in the claim for negligent misrepresentation is the justifiable reliance upon the information. Since the plaintiff has produced no medical records or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1238789 (D.D.C.)
**(Cite as: Slip Copy)**

prescription records that Dr. Safon ever prescribed the defendant's DES to the plaintiff's mother, or relied on the defendant's literature, the plaintiff's claim for negligent misrepresentation fails. (*See* Def. Mot 3); (Pl. Reply Br. 6.) Therefore, in light of these facts, no rational jury could find reliance on the defendant's product warnings.

### E. Breach of Warranty and Strict Liability

**\*8** In the complaint the plaintiff alleges that the defendant breached the implied and express warranties it provided with the DES it manufactured and promoted. While the plaintiff does not specifically address what warranty the defendant breached, as a matter of law, given all the rational inferences she is entitled in this summary judgment motion, the plaintiff's claim under all of the warranties recognized by the State of Massachusetts fail.

Furthermore, in product liability cases, Massachusetts does not have a strict liability tort apart from liability for breach of warranty under the Uniform Commercial Code, codified by Massachusetts under Mass. Gen Laws Ann. Ch. 106, § § 2-314 to 2-318. *Swartz v. General Motors Corp.,* 375 Mass. 628, 629 (Mass ., 1978.) Amendments to the Massachusetts version of the Uniform Commercial Code made it clear that the Legislature transformed warranty liability into a remedy intended to be as fully comprehensive as the strict liability theory of recovery that has been adopted by many other jurisdictions. *Back v. Wickes Corp.,* 375 Mass. 633, 639 (1978). (citing *See Swartz v. General Motors Corp.,* 375 Mass. 628, 629 (1978); *Hoffman v. Howmedica, Inc.,* 373 Mass. 32 (1977).) Since this Court finds that the plaintiff's breach of warranty claims fail, so to do the plaintiff's strict liability claims.

### 1. Breach of Express Warranty

Under the Massachusetts law governing express warranties:(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description; or (c) Any sample or model which is made part of the basis of

the bargain creates an express warranty that the goods shall conform to the sample or model. Mass. Gen Laws Ann. Ch. 106, § 2-313. Furthermore, in an express warranty claim, plaintiff must show reliance on such warranty. *Sprague v. Upjohn Co.,* 1995 WL 376934 \*3 (D.Mass.1994) (citing *Roth v. Bay-Stel's Hair Stylists, Inc.,* 18 Mass.App.Ct. 975, 976 (1984)). The plaintiff admits that she has no medical records that Dr. Safon prescribed DES to the plaintiff's mother, nor evidence that Dr. Safon ever read the defendant's product warnings. (*See* Def. Mot 3-4); (Pl. Reply Br. 6.) Furthermore, the plaintiff in the twenty-four exhibits she submitted to the Court, provided little evidence to support affirmatively that either the plaintiff's mother was prescribed DES from Dr. Safon, frequented the Drug Fair that Mr. Baker was a pharmacist at, or most importantly, that the plaintiff's mother ingested DES produced by the defendant. What the plaintiff has provided is allegations and speculation with an assortment of seemingly related facts. To survive summary judgment, there must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249 (citing *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 287 (1968)). In this case, there is a dearth of evidence that could support a jury verdict, for the evidence that the plaintiff has put forth is colorable at best. *Id.* at 250 (stating that "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

### 2. Implied Warranty of Merchantability

**\*9** Under Massachusetts law, a theory of liability based upon implied warranty is "congruent in nearly all respects with the principles expressed in § 402A of the Restatement (Second) of Torts (1965)." *Sprague,* 1995 WL 376934 at \*3 (citing *Back,* 375 Mass. at 640 (1978); *See also, Anderson v. Owens-Illinois, Inc.,* 799 F.2d 1, 2 (1st Cir.1986); *Colter v. Barber-Greene Co.,* 403 Mass. 50, 61 (1988); *Correia v. Firestone Tire & Rubber Co.,* 388 Mass. 342, 353, 446 N.E.2d 1033 (1983) (claims based upon a breach of implied warranty "sound essentially in tort")). Furthermore, the Supreme Judicial Court of Massachusetts recognized that prescription drug cases must be evaluated under the principles of negligence. *Id.* (citing *Payton v. Abbott Labs,* 386 Mass. 540, 573 (1982)). This rule has been followed by both the Supreme Judicial Court and federal courts applying Massachusetts law. *Id.* (citing *See, e.g., Garside.,* 976 F.2d 77; *MacDonald.,* 394 Mass. 131; *Sanderson v. Upjohn Co.,* 578 F.Supp. 338

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(D.Mass.1984)). Thus, in accordance with Massachusetts law and the precedent set forth within the First Circuit, this Court consolidates the plaintiff's breach of implied warranty claim with her claims of negligence and for the same reasons set forth above granting the defendant summary judgment on the issues of negligence, this Court grants the defendant summary judgment on the implied warranty of merchantability. *See Id.*

### 3. Implied Warranty of Fitness for a Particular Purpose

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified ... [,] an implied warranty that the goods shall be fit for such purpose ." Mass. Gen Laws Ann. Ch. 106, § 2-315. Given the shear lack of evidence to support the plaintiff's allegations in this case, this claim of the plaintiff must fail as well. The plaintiff admits that she has no medical records that Dr. Safon prescribed DES to the plaintiff's mother, nor evidence that Dr. Safon ever read the defendant's product warnings. (*See* Def. Mot 3-4); (Pl. Reply Br. 6.) It is this Court's belief that Mr. Baker's statement regarding the likelihood of a woman entering his store with a prescription for DES and receiving the defendant's DES, without more, is insufficient to establish that Dr. Safon relied on the defendant's skill when he allegedly proscribed DES to the plaintiff's mother. Absent even the most basic of evidence demonstrating that Dr. Safon relied in any way on the defendant's warning, the plaintiff's claims do not rise above colorable facts and cannot survive a motion for summary judgment. *Anderson,* 477 U.S. at 249 (citing *Dombrowski v. Eastland,* 387 U.S. 82 (1967) (per curiam)).

### F. Punitive Damages

Since the Court finds that the plaintiff lacks a viable cause of action in this case, the plaintiff may not receive punitive damages.

### *CONCLUSION*

*10 Under Massachusetts law, the plaintiff in this case has failed to provide enough evidence for a reasonable jury to conclude it is more probable than

not that the defendant's product did cause harm to the plaintiff. Accordingly, the defendant's Motion for Summary Judgment on all counts will be GRANTED. A separate order shall issue this date.

SO ORDERED.

D.D.C.,2007.
Kelley v. Eli Lilly and Co.
Slip Copy, 2007 WL 1238789 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**BY ORDER OF THE**
**SECRETARY OF THE AIR FORCE**



*AIR FORCE INSTRUCTION 51-202*

*7 NOVEMBER 2003*

Incorporating Through Change 2, 16 May 2007

*Law*

*NONJUDICIAL PUNISHMENT*

## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

**ACCESSIBILITY:**  Publications and forms are available on the e-Publishing website at
**www.e-publishing.af.mil** for downloading or ordering.

**RELEASABILITY**:  There are no releasability restrictions on this publication.

---

OPR:  AFLOA/JAJM                            Certified by:  AFLOA/CC (Col Evan L. Haberman)
Supersedes  AFI 51-202, 1 July 2002                                     Pages: 44

---

This instruction implements AFPD 51-2, *Administration of Military Justice*, and Article 15, Uniform
Code of Military Justice (UCMJ), and it supplements the Manual for Courts-Martial (MCM), United
States, Part V. It establishes requirements for imposing nonjudicial punishment (NJP) on members of the
Air Force and provides rules and procedures for imposing this punishment regardless of the member's
assignment. This instruction applies to all Air Force military personnel, including members of the U.S.
Air Force Reserve and the Air National Guard while in Federal service. It requires collection and mainte-
nance of information protected by the Privacy Act of 1974 authorized by 10 U.S.C. § 815. System of
records notice F051 AF JA F, *Courts-Martial and Article 15 Records*, applies. Maintain and dispose of
records created as a result of processes prescribed in this publication in accordance with AFMAN 37-139,
*Records Disposition Schedule*. Only a major command (MAJCOM) or Headquarters of the Air Force
Reserve Command (AFRC) are authorized to issue supplements to this instruction upon approval by
AFLSA/JAJM. Submit proposed supplements in writing to AFLSA/JAJM, 112 Luke Avenue, Room 343,
Bolling AFB, DC 20332-8000, for approval before publication.

### SUMMARY OF CHANGES

This interim change implements new guidelines regarding public nonjudicial punishment. **Section 3C-
Imposing and Administering Punishments.** Paragraph **3.13. Member's Presentation**, now has addi-
tional language addressing public nonjudicial punishment (NJP). Further a new paragraph is added to the
AFI. Paragraph **3.19. Release of Information** addresses the issue of the public release of information
subsequent to punishment. Paragraph **3.19.** now falls under **Section 3C-Imposing and Administering
Punishments.** What was formerly paragraphs **3.19.**, **3.21.** and **3.22.** under **Section 3D- Action When the
Member Demands Trial by Court-Martial** are re-numbered to correspond to the addition of the new
paragraph **3.19.** Prior paragraphs **3.19. Restrictions.**, **3.21. Commander's Options.**, and **3.22. With-
drawing Demand for Trial.**, become paragraphs **3.21.**, **3.22.** and 3.22, respectively, with the same head-
ings and remain in **Section 3D**. A bar ( | ) indicates a revision from the previous edition.

## Chapter 3

## PROCEDURES FOR INITIATING AND IMPOSING NONJUDICIAL PUNISHMENT

### Section 3A—Responsibilities of the Initiating Commander

**3.1.  General Responsibilities.** Commanders who initiate NJP action and impose punishment act on the basis of information they determine relevant. See MCM, Part V, paragraph 4c(3), for the limited applicability of the Military Rules of Evidence. The commander's action must be temperate, just, and conducive to good order and discipline. Although it is the SJA's responsibility to advise and help the commander to evaluate the facts and determine what offense was committed, if any, it is the commander who makes the decision to impose punishment and the degree of punishment.

**3.2.  Notice of Recoupment of Benefits.** Concurrent with initiation of the NJP action, the initiating commander must provide written notice to a member who has received educational assistance, special pay, or bonuses concerning the member's obligation to reimburse the Air Force if the member is discharged (or involuntarily separated) for misconduct. This notice shall be accomplished in item 3 of the AF Form 3070. The member's signature in item 3 constitutes acknowledgement of this notice. The statement of understanding regarding recoupment is inserted in item 14 as a continuation of item 3. (See **Attachment 2** for a sample statement). Noncompliance with this provision shall not affect the legal sufficiency of the NJP action.

**3.3.  Timeliness of Actions.** In order to maximize disciplinary and rehabilitative effect, NJP should be offered as soon as possible after facts become known by the member's commander which indicate that offenses may have been committed. Commanders should offer NJP within 10 days of the "Case-Ready" date. The impartial and timely administration of military justice helps sustain good order and discipline. SJAs and chiefs of military justice should regularly analyze the Automated Military Justice Analysis and Management (AMJAMS) data as to each segment of NJP processing they control to determine specific areas for improvement, and implement appropriate management measures to maximize effectiveness and efficiency. However, failure to meet this processing goal shall not preclude a commander from initiating NJP proceedings. The following metrics have been established to assist in expediting the administration of justice.

3.3.1.  Offer 90% of all NJP actions within 10 days of the "Case-Ready" date. See **Attachment 3** for definition of "Case-Ready" date.

3.3.2.  Complete 80% of all NJP actions (Offer Date through Servicing SJA Review Date) within 20 days.

**3.4.  Standard of Proof.** While no specific standard of proof applies to NJP proceedings, including appeals, commanders should recognize that a member is entitled to demand trial by court-martial, in which case proof beyond a reasonable doubt of each element of every offense by legal and competent evidence is a prerequisite to conviction. Whether such proof is available should be considered before initiating action under Article 15. If such proof is lacking, NJP action is usually not warranted.

**3.5.  Providing Evidence to the Member.** After a commander serves the AF Form 3070 on a member, that member has a right to examine all statements and evidence upon which the commander intends to